# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

# AT SEATTLE

| | |
|---|---|
| JONATHAN HELD AND LISA HELD, FOR THEMSELVES AND AS PARENTS OF J.H, A MINOR,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHSHORE SCHOOL DISTRICT,<br><br>Defendant. | No. 2:13-CV-01548-MJP<br>AMENDED<br>**RESPONSE TO MOTION FOR SUMMARY JUDGEMENT** |

TO: The Clerk of the Court

AND TO: Donald Austin, Attorney for Defendant Northshore School District

## I. REQUEST FOR RELIEF

1. Defendant's Motion for Summary Judgment should be denied.

2. Plaintiff's attorney's fees and costs should be paid by Defendant.

## II. FACTS

Defendant filed a Motion for Summary Judgment egregiously premature in the discovery process and inappropriately in a highly fact-intensive case, making it improper for this Court to properly dispose of this case at this juncture in the proceedings.

### III. ISSUES

1. Should Defendant's Motion for Summary Judgment be denied?

2. Should Defendant pay Plaintiff's attorney's fees for having to respond to this Motion?

### IV. ARGUMENT

1. Introduction

This case is about a student, Plaintiff JH, and his parents, Plaintiffs Jonathan Held and Lisa Held, struggling against an entrenched school district which has refused to accommodate what disabilities were well documented in ways which could have easily improved his success in school, and in the process has discriminated against him and ignored their duties towards him. This case is not about a school district having done what they could, although it is agreed that what they did do was not enough to "assist a student with ADHD [among other disabilities that are agreed] to remember to turn in his homework assignments" (See Defendant Northshore School District's Motion for Summary Judgment, hereinafter Motion, p. 1 para. 1).

2. Legal Standard

The standard this Court must use should it find in favor of Defendant's instant Motion for Summary Judgment is set forth in CR 56(c) and <u>Wilson v. Steinbach</u>, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982) among numerous other cases of course: there must be no issues of material fact

and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when reasonable minds could differ on the controlling outcome of the litigation. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 192 P.3d 886 (2008). Judgment as a matter of law is appropriate where there is no legally sufficient basis for a reasonable jury to find for a party with respect to the issue. CR 50. In reviewing a motion for summary judgment, all facts and reasonable inferences are reviewed in the light most favorable to the nonmoving party. Steinbach, 98 Wn.2d at 437.

3. Argument

   a. Legal Standard

Notably, while the aforementioned rules of summary judgment are well established, Defendant has failed to reference all except the first portion of the first rule as set forth in Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 327 (1986) and in Wilson v. Steinbach, supra., that there must be no issues of material fact, in the instant Motion (p. 13, para. 4). This appears to be because, in addition to there being (many) issues of material fact in this case, the remaining portion of the rules cited above, that are strategically left out of the instant Motion, also require this Court to rule in favor of Plaintiffs. In fact, Defendant does not substantively address the dispositive issue: are there issues of material fact that exist in this case? Instead, it relies exclusively upon its fact-based position that it has done many things to accommodate Plaintiff JH at school. The very declarations they have produced directly conflict with the declarations and evidence set forth in Plaintiff's Complaint in this case. This factual dispute as to all material allegations is dispositive, requiring this Court to rule in favor of Plaintiffs.

Law Office of Jenny Cochrane
777 108th Ave. N.E.; Ste. 2240
Bellevue, WA, 98004
(425)451-7276 (p)
(206)338-6527 (f)

b. Discriminatory Treatment

In addition to ignoring the factual dispute that requires this Court to deny Defendant's Motion, Defendant has ignored the issues most unfavorable to his client's position in the summary judgment proceeding, the many allegations of discriminatory treatment towards JH by school district personnel, much of which is even supported by Defendant's own biased documentation. One example of treatment deemed inappropriate by both parties is verification of one if not several lewd and abusive remarks made to JH by his teacher Mr. Schmidt, which was deemed credible both by Mr. Sauer, JH's counselor, when JH reported this mistreatment to him, as well as by Defendant's own investigator, Kathleen Haggard (See Exhibit 1, page 9, paragraph 2 of the investigative report entitled "Re: JH". Notably, Ms. Haggard is an attorney employed at opposing counsel's law firm, yet she was improperly referenced by Defendant as an "outside investigat[or]" in emails to myself and to Plaintiff Jonathan Held. See Exhibit 2, email labeled "FW: Final Report Re: Investigation into Allegations" dated April 1, 2013. Many other examples of discriminatory treatment are established by further documentation provided by Defendant.

One example of discriminatory acts of Defendant against JH, supportive of both Plaintiff's religious discrimination claim and Plaintiff JH's disparate treatment relative to individuals without disabilities who were involved in disciplinary actions for the same events Plaintiff JH was involved with, involves a urination incident among JH and two other students. On page 3 of Defendant Employee Chris Bigelow's Decision on Mr. Held's Citizen Complaint, dated May 6, 2013, Defendant's Exhibit 6 attached to the instant Motion: Mr. Bigelow found a [third party] 'student had cut off the lights,' which is supportive of Plaintiffs' claim that this

student's behavior was a bullying tactic which caused JH anxiety and loss of bladder control leading to the urination incident, yet only JH was not disciplined for this until Plaintiffs Jonathan Held and Lisa Held filed a Harassment, Intimidation or Bullying Incident Reporting Form dated 4/11/13 (Exhibit 3), as well as Plaintiff Jonathan Held's Tort Claim Form filed 4/25/13, Defendant's Exhibit 14, whereby they reported the ongoing threats made by this third party student as well as discriminatory treatment of JH by school district employees Obadiah Dunham and Jacob Hendrickson, as well as several further times having informed the school district of ongoing bullying and threats by the third party student involved in the incident, (See Exhibit 4, Email labeled "CP [redacted] threats", sent from Plaintiff Jonathan Held to several Defendant employees).

A second example of of discriminatory treatment of Defendant against JH involved Mr. Bigelow noting in his Decision on Mr. Held's Citizen Complaint (Exhibit 5) that JH was assigned a Saturday School, which was done despite Plaintiffs many times informing Defendant of their Jewish religious practices requiring JH not to attend Saturday School. Because their request that JH not attend Saturday School because of his religious practices was denied until Plaintiff talked about this matter at yet a higher level with Jeff Sherwood, Defendant's refusal to religious discrimination claim; see page 3 of Exhibit 6, "Notes from Meeting with Held's", also Exhibit 10 attached to Plaintiffs' Complaint; also See Exhibit 7, highlighted portions of notes taken from 4/8/13 meeting labeled "Held, Dunham, Hendrickson, and Nickels", pgs. 1, 3, and 4); and see Exhibit 5, highlighted portion of Email from Plaintiff Jonathan Held to Chris Bigelow and Jeff Sherwood at Northshore School District dated 5/28/13, and Exhibit 8, highlighted portions of Email from Defendant employee Obadiah Dunham to Plaintiff Jonathan Held labeled

Law Office of Jenny Cochrane
777 108th Ave. N.E.; Ste. 2240
Bellevue, WA, 98004
(425)451-7276 (p)
(206)338-6527 (f)

"Jacob's Discipline." Viable and material issues of fact remain in regards to Plaintiff's Washington Law Against Discrimination to prove that: 1) JH has bona fide religious belief that conflicts with an educational requirement; 2) he informed the District of the conflict; and 3) the District took adverse action because of his refusal to comply with the requirements, pursuant to Hiatt v. Walker Chevrolet Co., 120 Wn.2d 57, 664-65, 837 P.2d 618 (1992).

Defendant emphasizes JH's indication that he sometimes works as a ski instructor on Saturdays, inferring therefrom that he cannot be a practicing Jew for whom religious accommodation should be provided; however, there is no legal support for any appropriate legal analysis to conclude this would be true. It is not for Defendant to determine how a Jew must practice their religion, something of which they had no knowledge when being informed of their religion in any case when a request for accommodation is made, in order to decide whether they are deserving of an appropriate accommodation for a religious reason. For this reason, Defendant's request for summary judgment in regards to religious accommodation must fail, these claims remaining viable and otherwise undisputed.

    c. Failure to Accommodate JH's Disabilities

        i. Premature Request by Defendant for Determination of Facts at Issue

A number of the factual disputes that exist involve whether Defendant had appropriately drafted a 504 Plan, as well as whether Defendant had appropriately accommodated Plaintiff JH with these 504 Plans. Defendant relies upon having drafted 504 Plans, as well as that it has done listed things to attempt to accommodate JH, in appearing to claim that what accommodations they made were legally appropriate. However, it is not for this Court, in determining whether

summary judgment should be granted, to determine whether what steps Defendant has taken were appropriate, simply because steps of some nature were taken to attempt to accommodate Plaintiff JH, because these are factual determinations not established simply because Defendant has filed largely formulaic declarations indicating Defendant employees claim to have spent significant time with Plaintiff JH. Instead, this Court must determine whether genuine issues of material fact exist and that there is a legally sufficient basis for a reasonable jury to find for a party with respect to each material issue. CR 50. Numerous issues of material fact exist in this case as to all matters in dispute (See Declaration of Jonathan Held dated July 29, 2014).

    ii.  Failure to Accommodate JH's Disabilities

Although Defendant has made a premature request of this Court that it determine factual matters in dispute as aforementioned, should this Court entertain this request in some manner, Defendant fails to demonstrate any reasonable accommodation for Plaintiff's disabilities.

A first example of the failure of Defendant to accommodate Plaintiff's disabilities in a nondiscriminatory manner involved behavior accommodations, which were removed by Defendant inappropriately based on Defendant's position that Plaintiff should have had an evaluation done in regards to anxiety issues with a designated physician, Dr. Young, despite there being no change in JH's disabling conditions (See Email from Defendant employee Carolyn O'Keefe dated 4/1/13, Exhibit 9; and see Behavior Accommodation incorporated in JH's 504 Plan dated 10/23/12 and subsequently removed henceforth beginning with the 2/26/13 504 Plan (Defendant's Exhibit 4 attached to the instant Motion). Numerous treating physicians, including JH's neurologist and key expert in the school district meeting which led to his first 504

Law Office of Jenny Cochrane
777 108th Ave. N.E.; Ste. 2240
Bellevue, WA, 98004
(425)451-7276 (p)
(206)338-6527 (f)

Plan, as well as his treating physician, Dr. Mustafa and Dr. Weinberg, have verified JH's anxiety diagnosis as well as the other disabling conditions referenced in Defendant's Motion (See Exhibits 10, 11, and 12, also Exhibits 7, 8, and 9 attached to Plaintiffs' Complaint. Therefore, there was no basis to change the 504 Plan since no change in JH's diagnoses had taken place. The Behavior accommodation removed from JH's 504 Plan was detrimental to his success in school because, when accommodated, it had permitted him to see his counselor prior to the Vice Principal Mr. Hendrickson, the latter whom he had experienced a number of improper and discriminating treatment with. In addition, Plaintiffs did not want to have an evaluation conducted by the doctor designated by Defendant because he was a psychologist, not a neuropsychologist, and he had told Plaintiff Jonathan Held that he had exclusively testified in support of school districts, clearly demonstrating both inadequate experience and bias in favor of Defendant, neither of which would likely lead to the accommodations Plaintiffs were having such a difficult time maintaining in JH's 504 Plan.

A second example of a discriminatory refusal by Defendant to properly accommodate JH was in regards to JH's long history of inattention and difficulty doing his homework and related issues, which were not sufficiently described in JH's 504 despite continuing, increasing problems with this and Plaintiffs' repeated requests for appropriate changes to the 504. This was acknowledged as a problem by Defendant's own statements in its supporting Declaration by Obadiah Dunham (p. 2, para. 8).

    d. Viable Discrimination Claims Which Should Survive Summary Judgment

        i. Section 504 and ADA Claims

Plaintiff Jonathan Held intended to file the Tort Claim referenced in Defendant's instant Motion on behalf of his son, Jacob Held, a minor, and his wife, Lisa Held, as his son is not of legal age to contract on his own behalf and because the incident involved damages related to both his son and his wife for consequential damages. For these reasons, Plaintiff's state law based claims, specifically negligence, outrage, and Washington Law Against Discrimination, as noted by Defendant, should not be dismissed.

Viable, material issues of fact remain regarding Plaintiffs' proving that JH "was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity…" 42 U.S.C. § 12132. Similarly, viable and material issues of fact remain regarding Plaintiffs' proving that JH "was denied the benefits of the program solely by reason of his disability…" 29 U.S.C. § 794. The reasons for this have been outlined above as Plaintiffs have not been provided the accommodations needed in regards to his disabling conditions. Just because Defendant has indicated they have made efforts to deal with issues related to JH does not mean they were accommodating JH as required under Section 504 and ADA, essentially providing him the accommodation he needs, due to his recognized disabling conditions, to have an education equivalent to that accessed by non-disabled students. In fact, the opposite situation has been seen both in accommodation of JH's disabling conditions through his 504 Plan and in how he has been disciplined in ways disparate from that of his non-disabled peers. In addition to that, a number of Defendant staff had made a number of discriminatory comments and done discriminatory things to JH, evidence of which is disputed but in some ways even supported by Defendant's own Declarations and documentation, most significantly the Declaration of Michael

Law Office of Jenny Cochrane
777 108th Ave. N.E.; Ste. 2240
Bellevue, WA, 98004
(425)451-7276 (p)
(206)338-6527 (f)

Sauer and the Investigative Report of Kathleen Haggard as aforementioned. Numerous issues of material fact remain regarding these claims; therefore, Defendant's instant Motion should be denied pertaining to these claims.

ii. Deliberate Indifference

For all aforementioned reasons pertaining to Plaintiffs' viable claims that involve material factual matters in dispute, this Court cannot dispose of this case in Defendant's favor at this time because Defendant in fact knew of the risks involved with not properly accommodating JH's disabilities, which is the standard set for proving deliberate indifference under Section 504 or the ADA as interpreted by the court in Patel v. Kent School District., 648 F.2d 965, 974 (9th Cir. 2011). As aforementioned, Defendant employee Obadiah Dunham, Principal at Leota Junior High, JH's junior high school at the time in question, was aware of the problems that were never resolved by himself and other school district employees.

Defendant cannot prevail on summary judgment based solely on its own self-serving statements that they were attempting to accommodate JH in some way based on the facts that are in dispute, particularly when its lay witnesses make formulaic inappropriate legal conclusions that they were not "deliberately indifferent" (See Declaration of Obadiah Dunham dated July 30, 2014, p. 2, para. 7; Declaration of Michael Sauer dated December 9, 2013, p. 3, para. 7; Declaration of Kurtis L. Schmidt dated December 9, 2013, p. 3, para. 10; and Declaration of Adam Zitzmann dated December 10, 2013, p. 2, para. 5). Defendants were made aware of the discriminatory acts involving a number of employees indicated in the Complaint for this case since June 15, 2012 (See Exhibit 13, Email from Plaintiff Jonathan Held to several Defendant

employees dated June 15, 2012), and Defendant has indicated through discovery that nothing was done to take care of these concerns (this response was reiterated in a recent CR 26(i) phone conference wherein opposing counsel informed the undersigned attorney that nothing was done in response to this email, confirming what is indicated in discovery (See Exhibit 14, Interrogatory No. 6 and Response). Particular notable is the aberration in this formulaic approach of the Declarations provided by Defendant to support the instant Motion within the Declaration of Michael Sauer, the sole employee who JH had relied upon as the school counselor when his behavior issues related to his disability were accommodated. Mr. Sauer notes that he spent significant time with issues related to JH, and while other employees indicate they spent much more time than this on these issues, Mr. Sauer appears to be the employee who is in reality the most concerned and truthful about what disabling conditions and related issues JH has had as well as what discriminatory treatment he has suffered at the hands of Defendant employees, as aforementioned (p. 3, para. 2).

Defendants rely heavily upon Plaintiff Jonathan Held's indication in his deposition that problems were resolved at times when issues were brought up to Defendant employees; however, his interpretation of Plaintiff Jonathan Held's statements is incorrect and does not account for the countless hours spent by Plaintiffs in seeking help for JH regarding the many discriminatory events and refusal of Defendant to properly accommodate his disabilities. Specifically, citing what Defendant has highlighted in Exhibit 2 of Defendant's Motion, p. 138 – 139, Plaintiff Jonathan Held and opposing counsel exchanged these words:

> 1. It was pretty frustrating that the 504 plan, no matter
> 2 What extent you went to revise it and get it to work, it

3 Simply would not work, because, as I previously stated,
4. Different teachers would interpret it and apply their own
5. rules and regulations in terms of what it permitted and
6 what it didn't permit.
7 That was the biggest frustration.
8 Q And when those frustrations would come up, you would
9 communicate with Mr. Dunham about them?
10 A Depends.
11 He would be CC'd on most correspondence where there
12 were issues that were missing that J= wasn't being
13 notified about or wasn't being prompted for. Absolutely
14 he was made aware of these issues.
15 Q In communicating with him or with the teachers about
16 these issues, were they generally, ultimately resolved?
17 A Not all the time, no.
18 There was one specific instance with Caroline
19 O'Keefe where we met at the end of the school year-- I
20 want to say last year, but give me a second to look this
21 up, and I can be more specific.
22 The short answer is absolutely not.
23 Q What percentage of the time, roughly, were they not
24 resolved?
25 A Again, ifs-- I don't have a percent for you in terms of,
1 you know, ten percent of the time we didn't get issues
2 resolved as opposed to 90 percent—(highlighting mine)

While Plaintiff Jonathan Held later seems rushed into responding to a question and then affirmatively indicating this percentage is actually what is the resolution rate, he has been confused and asked a leading question to which he then responded affirmatively, rather than giving a descriptive response, which can better be relied upon, as in line 25 above. In any case,

Law Office of Jenny Cochrane
777 108th Ave. N.E.; Ste. 2240
Bellevue, WA, 98004
(425)451-7276 (p)
(206)338-6527 (f)

this evidence is not reliable or clear in indicating any percentage estimation of the school district's resolution of issues the Plaintiffs brought to them on behalf of JH. This certainly has been overwhelmingly relied upon by Defendants in its argument that Plaintiffs are satisfied with Defendant's accommodation of JH's needs. To the contrary, as aforementioned and replete within Plaintiffs' Complaint in this case and its accompanying exhibits, and as indicated by Plaintiff Jonathan Held's Declaration dated July 29, 2013, Plaintiffs have been extremely dissatisfied with the way Defendant has handled JH's needs.

The reason Plaintiff Jonathan Held described in his deposition that Defendant had responded and sometimes corrected discriminatory acts and refusals to accommodate JH in his agreed areas of disability was because after filing complaints and pursuing appeals a number of times, which is referenced by Defendant and documentation of which is provided in exhibits by Defendant attached to the instant Motion, some of the issues were resolved. However, many more issues were never resolved, which is the reason Plaintiffs filed this lawsuit. A parent should not have to go to such lengths to see their child's disabilities more closely examined by a school district. For these reasons, Defendant was deliberately indifferent as established under <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 138 (9th Cir. 2001) and other federal cases.

One egregious example of Plaintiffs' rights being violated involved improperly holding a manifestation determination hearing regarding JH despite the suspension involved not meeting the threshold requirement of more than 10 days for such a hearing to be required, pursuant to WAC 392-172A-05145(4)(e), and then inviting School Resource Officer Callahan to the meeting where JH's disabilities and other private information were discussed against Plaintiffs'

wishes. Additionally, Defendant failed to correct the error in not needing to hold the manifestation hearing in the five days after notice was given to them by Plaintiffs that they were not going to attend the hearing because it is not supposed to be held due to the suspension not being for more than 10 days (See Exhibit 15, Email from Plaintiff Jonathan Held to several Defendant employees dated November 14, 2014). Plaintiff denies that he told Officer Callahan about JH's disabilities, in contrast to what Officer Callahan has noted in his Declaration dated July 31, 2014, yet another material fact in dispute requiring this Court not to dismiss Plaintiff's claims regarding discriminatory treatment by Defendant against JH (See Exhibit 16, email from Plaintiff Jonathan Held to several Defendant employees dated November 7, 2013).

### iii. Gender Discrimination

Viable material issues of fact exist that should lead this Court to deny Defendant's instant Motion in regards to gender discrimination. The deposition passages cited by Defendant in the instant Motion support both disparate treatment of girls in regards to discipline related to tardiness and discipline generally, specifically that JH got 'kicked out of class' on occasions for reasons which appear to have been motivated by gender bias and for no other legitimate purpose. To quote what Defendant has highlighted from Plaintiff Jonathan Held's deposition, which was largely reiterated in JH's deposition later:

> We documented the incidence that we knew had occurred,
> 25 the violations of policies and procedures that had
> 1 occurred--
> 2 Q So the question I have is:
> 3 What were you aware of when you filed the complaint?
> 4 A With regard to gender, just ..1=s--

5 Q About how JM was treated differently than girls?

6 A Just that, and with regard to physical education and the

7 teacher, Ms. Barnham, that he had, that it was standard

8 practice that girls were favored and treated differently

than the boys were.

10 One example--

11 Q How so?

12 A One example he gave me was that if a boy was late, he

13 would have some punishment, whereas if girls were late,

14 the same punishment would not apply.

1 I don't know if it was because he was late.

Q Was J. ever late?

15 A Probably.

16 Do you know if he was ever punished for being late?

17 A I'm sure he was.

18 Q Do you know if he was or not?

19 A I am pretty sure he was.

20 Q Why do you think that?

21 A I'm sorry?

22 Q What is your basis for the certainty?

23 A I remember a conversation where he indicated to me that

2425 he was punished.

2 I know that he was kicked out of Ms. Barnham's class

3 on several occasions.

While Plaintiff Jonathan's Freedom of Information Act request for grade distribution by gender was never responded to by Defendant personnel, in discovery, Defendant did produce the following chart to support a portion of what Plaintiffs are still awaiting in response to the Freedom of Information Act requests that are outstanding for several months now (See Exhibit 17, titled "Barnum Grades Given – SY's 08-09 thru 12-13"). Plaintiffs have provided evidence

supporting a claim that a pattern of disparate treatment existed with particular teachers, especially Ms. Barnum, related to discipline and grades, pursuant to <u>Fell v. Spokane Transit Authority</u>, 128 Wn.2d 618, 637, 911 P.2d 1319 (1996). These matters indeed appear to be disputed, involve material issues of fact, and Plaintiff cannot be faulted for Defendant's failure to provide what documentation Plaintiffs have requested to support their requests for many months now. Plaintiffs, through the undersigned counsel, has been awaiting updated discovery, in the form of interrogatories and requests for production as well as several depositions, to further supplement gender discrimination claims as well as all claims in this case.

    iv.  Negligence

Defendant's reliance on an unconvincing analysis of educational malpractice is deficient, as Plaintiff's claim of negligence would likely prevail against Defendant in the case of educational malpractice, but also under the negligence theory that "A school district has an enhanced and solemn duty to protect minor students in its care." Christensen v. Royal Sch. Dist. No. 160, 156 Wn.2d 62, 67, 124 P.3d 283.

Schools have a "'special relationship" with the students in its custody and a duty to protect them 'from reasonably anticipated dangers.'" <u>Yurkovich v. Rose</u>, 68 Wn. App. 643, 847 P.2d 925 (1993) (citing <u>Webb v. Seattle</u>, 22 Wn.2d 596, 602, 157 P.2d 312 (1945)). A school district also has a duty to anticipate dangers and take precautions. This duty was explained by the court in <u>Carabba v. Anacortes School Dist. No. 103</u>, 72 Wn.2d 939, 955, 435 P.2d 936 (1967): The duty owed by a school district to its pupils has been recently stated by the court to be: [T]o anticipate reasonably foreseeable dangers and to take precautions protecting the children in its

custody from such dangers. The child may sue the school district for injuries resulting from its failure to protect the child . . . [A] school district may be liable for injuries sustained as a result of negligent supervision or failure to supervise activities of its students. The school's duty to inspect the premises and to anticipate dangers is continuing in nature and the students have a right to assume that the school district has performed its duty. Kelley v. School Dist. No. 71, 102 Wn. 343, 173 Pac. 333 (1918). That assumption is part of the special relationship that exists between a school district and its students: A school district takes on a special relationship with its pupils, predicated on the district's role as substitute parents. McLeod, 42 Wn.2d at 309. The duty imposed under these circumstances is one of reasonable care: as its supervises the pupils within its custody, the district is required to exercise such care as a reasonably prudent person would exercise under the same or similar circumstances. J.N. v. Bellingham School Dist. No. 501, 74 Wn. App. 49, 57, 871 P.2d 1106 (1994), citing Briscoe v. School Dist. No. 123, 32 Wn.2d 353, 362, 201 P.2d 397 (1949). School personnel are held to a higher "standard of reasonableness" than an ordinary parent. This is based on the special training held by school personnel. Reasonable or ordinary care is that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances or conditions. Gordon v. Deer Park School Dist. No. 414, 71 Wn.2d 119, 122, 426 P.2d 824 (1967). Whether a risk of harm is reasonably foreseeable "under the same or similar circumstances" depends upon the particular defendant's characteristics and experience. See id. at 125 (foreseeability of injury to a child during supervised baseball game on school premises evaluated in the light of the instructor's "experience in playing baseball,"); see generally Keaton, et al, Prosser and Keaton on the Law of

Torts § 32, at 175, 185 (5th ed. 1984) (persons must use all care which is consistent with particular knowledge, experience, or skills).

Defendants failed to properly supervise the students when JH was continually bulled by the third party students related to the urination incident and other incidents described above, and he and his parents, Plaintiffs Jonathan Held and Lisa Held, have suffered a number of emotional health related damages and has had to commence private schooling because Defendant was unable to provide him the appropriate education he deserved under applicable federal and state laws (See Exhibit 18, Premera Claims History Review dated 1/6/14, and Exhibit 19, Cedar Park Christian School for 2013-2014). Similarly, Plaintiffs have ample evidence supporting their claim of a hostile educational environment, a claim supported by Dr. Oram, upon whose expert opinion Defendant has relied to create JH's 504 Plan, and others treating him for anger, depression, and self esteem issues related to what he has experienced while under the care of Defendant employees.

v. Intentional Infliction of Emotional Distress

Defendant incorrectly claims Plaintiffs are pursuing the claim of intentional infliction of emotional distress exclusively because of three isolated incidents; however, Plaintiffs are pursuing this because of a number of isolated incidents as well as the cumulative effect all the discriminatory treatment has caused Plaintiffs. The issues endured by Plaintiff have been extreme, causing physical distress, emotional distress, and the need to leave the public school system at great expense. JH has been called a "dick," a "jackass", "stupid" (See Declaration of Jonathan Held dated July 29, 2013). He has overheard Defendant employees talk about him in a

derogatory and spiteful way. Plaintiffs Lisa Held and Jonathan Held have had to endure great emotional distress due to Defendant ignoring their requests for appropriate accommodations and apologies and proper training for Defendant employees who had mistreated JH in a discriminatory manner. Plaintiff Lisa Held went to a manifestation determination hearing that should not have been scheduled to see her son's private information projected on a wall for a third party to see over her tears and protest. No student and no parent of any student should have to undergo this treatment without resolution. Plaintiffs have viable material issues of fact they have provided a prima facie case to support, thereby meeting what standard is required of them in response to the instant Motion.

4. Conclusion

Not only do Plaintiffs have numerous viable claims for which material issues are in dispute, some of these facts are indisputably supportive of Plaintiffs' position in fact. In addition, until Plaintiffs are provided all discovery responses they have requested, and until depositions of Defendant employees and witnesses are completed to more fully support their claims, summary judgment against them would be wholly inappropriate. In addition, numerous policies and procedures of the Northshore School District have been violated in this case, for which much evidentiary support is available, related to all material issues in dispute.

For all the above reasons, Defendant's Motion for Summary Judgment should be denied, and Plaintiff's costs for having to defend against it should be ordered against Defendant because they improperly brought this Motion while many matters were in dispute, unnecessarily delaying

Law Office of Jenny Cochrane
777 108th Ave. N.E.; Ste. 2240
Bellevue, WA, 98004
(425)451-7276 (p)
(206)338-6527 (f)

discovery, which they are egregiously deficient in providing, and because numerous material issues remain in dispute so that summary judgment is not appropriate against Plaintiff.

Respectfully submitted this 11th day of September, 2014


/s/ Jenny Cochrane
Jenny Cochrane, WSBA #41789
Attorney for Plaintiffs
777 108th Ave. N.E.; Ste. 2240
Bellevue, WA, 98004
(425) 451-7276 (p)