UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JONATHAN HELD, et. al. | CASE NO. C13-1548 MJP |
| Plaintiffs, | ORDER ON MOTIONS |
| v. | |
| NORTHSHORE SCHOOL DISTRICT, | |
| Defendant. | |

THIS MATTER comes before the Court on Defendant Northshore School District's ("Defendant") Motion for Summary Judgment (Dkt. No. 27), Defendant's First Motion to Strike (Dkt. No. 41) and Defendant's Second Motion to Strike (Dkt. No. 48).  The Court reviewed the motions and all related pleadings and documents. The Court GRANTS in part and DENIES in part Defendant's First Motion to Strike, GRANTS Defendant's Second Motion to Strike, GRANTS in part Defendant's Motion for Summary Judgment, and DISMISSES Plaintiffs' state law claims without prejudice.

1                                    **Background**

2          Plaintiffs Jonathan and Lisa Held bring suit on behalf of themselves and their minor

3   child, J.H., (collectively, "Plaintiffs") against Defendant.  (Dkt. No. 1.)  Plaintiffs allege claims

4   for (1) violations of Section 504 of the Rehabilitation Act of 1973; (2) discrimination based

5   disability, sex, and religion in violation of the Washington Law Against Discrimination; (3)

6   violations of Title II of the Americans with Disabilities Act ("ADA"); (4) negligence; and (5)

7   intentional infliction of emotional distress.  (Id. at 16-19.)

8          J.H., a minor, attended Leota Junior High School in Northshore School District at all

9   times relevant to Plaintiffs' complaint.  (Dkt. No. 1 at 2.)   In 2011, Plaintiffs presented

10  Defendant with information that J.H. had been diagnosed with Attention Deficit Disorder

11  ("ADD").  (Dkt. No. 39-10.)  Defendant and Mr. and Mrs. Held worked together to prepare

12  J.H.'s Section 504 plan.  (Dkt. No. 33 at 2.)  J.H.'s Section 504 plan was revised four times

13  during J.H.'s seventh and eighth grade years.  (Id. at 3.)  At various times, J.H.'s Section 504

14  plan stated that J.H. should be provided the following accommodations, among others: (1) a

15  system for J.H. to work with his teachers to identify missing assignments; (2) additional days to

16  complete missing assignments and receive full credit; (3) breaking up of large projects into

17  smaller tasks; (4) additional time for tests and quizzes; and (5) teachers providing prompting

18  cues when J.H. was not paying attention.  (Id.)

19         Plaintiffs allege that J.H.'s Section 504 plan was deficient in several iterations and that

20  teachers routinely failed to implement the Section 504 plan or implemented it inconsistently.

21  (Dkt. No. 1 at 12.)

22
23         Plaintiffs also allege that staff at Leota Junior High School discriminated against J.H. on

24  the basis of his disabilities.  (Dkt. No. 1 at 4-5.)  Plaintiffs contend the following incidents of

discrimination occurred, among others: (1) a teacher used foul language with J.H.; (2) another teacher took a paper out of J.H.'s hands and said he doesn't need it because "all he'll do is waste it;" (3) two teachers muttered the word "stupid" when walking away from students they have difficulty dealing with. (<u>Id.</u> at 8-10.)

Plaintiffs assert that J.H. was treated in a manner disparate from his peers without disabilities when he was disciplined for incidents in which other students were also involved. (<u>Id.</u> at 8, 10.)  Plaintiffs allege that J.H. was inappropriately disciplined when he received a detention for urinating on the floor of the Wellington Elementary School bathroom.  (<u>Id.</u> at 10.)

Plaintiffs contend that they notified Defendant of the alleged incidents of discrimination by an email sent on June 15, 2012, but that Defendant failed to promptly investigate these incidents until Plaintiffs retained legal counsel in December 2012.  (<u>Id.</u> at 5.)  They also allege that they notified Defendant of additional incidents of harassment, including bullying by another student, in April of 2013 and that Defendant failed to take any action in response.  (<u>Id.</u> at 6.)

Plaintiffs further allege that Defendant also discriminated against J.H. on the basis of sex and religion.  (<u>Id.</u> at 16.)  Plaintiffs assert that when they told the vice principal that J.H. could not serve Saturday school detentions because they observe Sabbath, the assistant principal told Plaintiffs "he didn't care."  (<u>Id.</u> at 11.)  Plaintiffs allege that J.H.'s physical education teacher, Ms. Barnum, regularly treated the girls in the class better than the boys and discriminated against J.H. on the basis of his sex.  (<u>Id.</u> at 7.)

Plaintiffs contend that these incidents created a hostile educational environment for J.H. (<u>Id.</u> at 11.)  They assert that these events caused Mr. and Mrs. Held severe distress.  (<u>Id.</u> at 14-15.)  Plaintiffs seek compensatory damages "inclusive of compensatory education, lost wages,

1  and related consequential damages . . . for harm suffered, opportunities denied, and deprivation

2  of rights . . ." (Id. at 19.)

3      Defendant rebuts all of Plaintiffs' factual allegations and moves for summary judgment

4  on all of Plaintiffs' claims. (Dkt. No. 27.)

## Analysis

6  I.    Defendant's First Motion to Strike

7      Plaintiffs' response to Defendant's motion for summary judgment was due on August 25,

8  2014. LCR 7(d)(3). Plaintiffs' filed their response three days late, on August 28, 2014. (Dkt.

9  No. 39.) On August 29, 2014, Defendant filed its reply and a motion to strike Plaintiffs'

10 response as separate filings in violation of the local rules. (Dkt. Nos. 41 and 43); see also LCR

11 7(g). Because both parties violated the local rules, the Court considers both Plaintiffs' response

12 and Defendant's First Motion to Strike.

13     Defendant makes four arguments in its First Motion to Strike: (1) the Court should strike

14 Plaintiffs' response as untimely under Local Rule 7; (2) the Court should strike the exhibits

15 supporting Plaintiffs' response because they are unauthenticated and therefore constitute hearsay;

16 (3) the Court should strike Plaintiffs' exhibits because they identify minors by their first and last

17 names in violation of Federal Rule of Civil Procedure 5.2(a); and (4) the Court should strike the

18 declaration of Plaintiff Jonathan Held because it is conclusory and lacks foundation. (Dkt. No.

19 41 at 1-2.)

20     Defendant first argues that it has been prejudiced by Plaintiffs' untimely response

21 because: (1) it has had less time to consider the response and prepare its reply; and (2) it has not

22 been able to obtain additional declarations from witnesses to address the issues raised by

23 Plaintiffs' response brief. (Id. at 3.) Defendant does not identify the arguments or issues that it

24

1  has been unable to address as a result of Plaintiffs' belated response.  (Id.)  Defendant filed an

2  amended reply brief on September 19, 2014.  (Dkt. No. 47.)  Defendant appears to have filed the

3  amended reply brief under the assumption that it was allowed to by the Court's order renoting

4  Defendant's Motion for Summary Judgment to September 19, 2014.  (Dkt. No. 45.)   In order to

5  alleviate any prejudice to Defendant caused by Plaintiffs' belated filing, the Court considers

6  Defendant's amended reply brief.

7       Defendant also moves to strike the Declaration of Plaintiff Jonathan Held and all of the

8  exhibits Plaintiffs have filed in support of their response brief.  (Dkt. No. 41 at 3-5.)  Defendant

9  argues "exhibits must be authenticated to be considered in opposing a summary judgment" and

10  that the exhibits "are therefore essentially hearsay."  (Id. at 3-4.)  Defendant does not challenge

11  the authenticity of any particular exhibit nor does Defendant explain why a particular exhibit is

12  hearsay.  (Id.)

13       When ruling on a motion for summary judgment, "a trial court can only consider

14  admissible evidence."  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

15  "Authentication is a condition precedent to admissibility and this condition is satisfied by

16  evidence sufficient to support a finding that the matter is what its proponent claims."  Id.  The

17  Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a

18  motion for summary judgment."  Id.  "In a summary judgment motion, documents authenticated

19  through personal knowledge must be attached to an affidavit that meets the requirements of Fed.

20  R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted

21  into evidence."  Id. at 773-4.  "However a proper foundation need not be established through

22  personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or

23  902."  Id. at 774.

24

1    Plaintiffs filed nineteen exhibits in support of their response and did not file a declaration

2  to authenticate the exhibits.  (Dkt. No. 39.)  The Court must determine whether some basis for

3  authentication exists under Federal Rule of Evidence 901(b) or 902.  Orr, 285 F.3d at 774.

4  Federal Rule of Evidence 901(b) describes ten ways in which documents can be authenticated.

5  Fed. R. Evid. 901(b).  One way is if "the appearance, contents, substance, internal patterns, or

6  other distinctive characteristics of the item, taken together with all the circumstances" suggest

7  that the document is what the proponent claims it is.  Fed. R. Evid. 901(b)(4).   Federal Rule of

8  Evidence 902 describes categories of self-authenticating documents.  Fed. R. Evid. 902.  The

9  Court also considers whether any of the exhibits are hearsay.  See In re Sunset Bay Assocs., 944

10  F.2d 1503, 1514 (9th Cir.1991) (hearsay statements are inadmissible at summary judgment).

11  **Exhibit 1**

12    Exhibit 1 is an investigative report regarding J.H. that was completed by Kathleen

13  Haggard, an attorney at Porter, Foster, Rorick, LLP, for Carolyn O'Keeffe, the assistant

14  superintendent of secondary education at Northshore School District.  (Dkt. No. 39-1.)   The

15  report has been signed by Kathleen Haggard and is printed on letterhead from Porter, Foster,

16  Rorick, LLP.  (Id.)  The pages of the document are numbered consecutively.  (Id.)  Plaintiffs

17  have also filed as an exhibit an email from Carolyn O'Keeffe forwarding this report to Mr. Held.

18  (Dkt. No. 39-2.)  The report can be authenticated under Federal Rule of Evidence 901(b)(4).  The

19  factual findings of the report fall under the hearsay exception for "factual findings from a legally

20  authorized investigation."  Fed. R. Evid. 803(8)(A)(iii).  Because Defendant presented the report

21  to Plaintiffs as its official statement regarding Plaintiffs' allegations of discrimination and

22  because Plaintiffs are now offering the report as evidence, the Court finds that the contents of the

23

24

1  report also fall under the hearsay exception for statements of an opposing party.  Fed. R. Evid.

2  801(d)(2).   The Court DENIES Defendant's First Motion to Strike as to Exhibit 1.

3  **Exhibit 2 and 9**

4  Exhibits 2 and 9 appear to be emails from Carolyn O'Keeffe, the assistant superintendent

5  of secondary education of Northshore School District, to Mr. Held.  (Dkt. Nos. 39-2 and 39-9.)

6  Both emails mention  J.H. and discuss the factual allegations that form the basis of Plaintiffs'

7  claims in this lawsuit.  (Id.)  Because Plaintiffs are offering these exhibits, there is no question as

8  to whether Plaintiffs in fact received these emails, and the emails can be authenticated under

9  Federal Rule of Evidence 901(b)(4).  Because Plaintiffs are offering these emails, the emails fall

10  under the hearsay exception for statements of an opposing party.  Fed. R. Evid. 801(d)(2).  The

11  Court DENIES Defendant's First Motion to Strike as to Exhibits 2 and 9.

12  **Exhibits 6 and 7**

13  Exhibits 6 and 7 appear to be notes from meetings between Mr. and Mrs. Held and

14  Defendant.  (Dkt. Nos. 39-6 and 39-7.)  The author of the notes cannot be determined from the

15  face of these documents.  (Id.)  The documents do not have headers, nor do they appear to be

16  official records.   (Id.)   These documents do not fall under any of the categories of self-

17  authenticating documents.   Fed. R. Evid. 902.   These documents do not have sufficient

18  distinctive characteristics to be authenticated under Federal Rule of Evidence 901(b)(4).  The

19  Court GRANTS Defendant's First Motion to Strike as to Exhibits 6 and 7.

20  **Exhibit 10**

21  Exhibit 10 is a document that consists of two parts: (1) J.H.'s medical evaluation dated

22  November 4, 2011; and (2) J.H.'s Section 504 referral.  (Dkt. No. 39-10.)  The document appears

23  to have been completed by Mr. Held.  (Id.)  The back of the form contains a section entitled "For

24

School Personnel Only" which appears to have been completed by Leota Junior High School staff. (Id.) The document is bates stamped ("NSS 000591-602") and appears to have been produced by Defendant in discovery. (Id.) The document has sufficient distinctive characteristics to be authenticated under Federal Rule of Evidence 901(b)(4). Plaintiffs rely on this exhibit to show that J.H's anxiety disorder has been verified by numerous physicians. (Dkt. No. 39 at 8.) The medical evaluation falls under the hearsay exception for statements made for the purpose of medical diagnosis. Fed. R. Evid. 803(4). The Court DENIES Defendant's First Motion to Strike as to Exhibit 10.

**Exhibits 11 and 12**

Exhibits 11 and 12 are J.H.'s medical evaluations. (Dkt. Nos. 39-11 and 39-12.) Both reports discuss J.H. by name, are dated, and have consecutively numbered pages. (Id.) Exhibit 12 has been offered by Defendant as an exhibit in support of its Motion for Summary Judgment. (Dkt. No. 28-2, Ex. 3) These documents have sufficient distinctive characteristics to be authenticated under Federal Rule of Evidence 901(b)(4). Because they are medical reports, these documents fall under the hearsay exception for statements made for the purpose of medical diagnosis. Fed. R. Evid. 803(4). The Court DENIES Defendant's First Motion to Strike as to Exhibits 11 and 12.

**Exhibit 13**

Exhibit 13 is an email sent by Jonathan Held to Carolyn O'Keeffe, Obadiah Dunham and two other individuals dated June 15, 2012. (Dkt. No. 29-13.) Defendant acknowledged that it received an email from Mr. Held on June 15, 2012 in an interrogatory response provided in discovery in this case. (Dkt. No. 39-14.) The contents of this email are similar to the email described in the interrogatory response. (Id.) Under these circumstances, the email can be

1   authenticated under Federal Rule of Evidence 901(b)(4).  Because Plaintiffs offer this email to

2   show that Defendant was on notice regarding discriminatory acts alleged in this lawsuit as of

3   June 15, 2012, the email is not hearsay.  Fed. R. Evid. 801(c).  The Court DENIES Defendant's

4   First Motion to Strike as to Exhibit 13.

5   **Exhibit 14**

6         Exhibit 14 is an interrogatory response provided by Defendant in discovery in this case.

7   (Dkt. Nos. 39-14.)  The document contains a footer identifying the document as "Northshore

8   School District's Response to Plaintiffs' First Set of Interrogatories and Requests for Production

9   Propounded to Defendant."  (Id.)  The document's footer also contains the logo of Defendant's

10  counsel's firm.  (Id.)  The exhibit has sufficient distinctive characteristics to be authenticated

11  under Federal Rule of Evidence 901(b)(4).  Because this is an interrogatory response provided by

12  Defendant in this case and because Plaintiffs are now offering the interrogatory response as

13  evidence, this document falls under the hearsay exception for statements of an opposing party.

14  Fed. R. Evid. 801(d)(2).  The Court DENIES Defendant's First Motion to Strike as to Exhibit 14.

15        Defendant also argues that the Declaration of Plaintiff Jonathan Held should be stricken

16  because "[w]ith the exception of sentences 19 and possibly 21 . . . everything Mr. Held states is

17  either conclusory, speculative or lacks foundation to be admissible evidence."  (Dkt. No. 41 at 5.)

18  Defendant argues that the Court should also strike "pages 6-9 of Mr. Held's declaration as being

19  unsworn statements."  (Id.)

20        The Court DENIES Defendant's motion to strike Mr. Held's declaration in its entirety.

21  Any conclusory or speculative statements in Mr. Held's declaration will not create genuine

22  issues of material fact.  Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 345

23

24

1    (9th Cir. 1995) (". . . conclusory or speculative testimony is insufficient to raise a genuine issue

2    of fact to defeat summary judgment.")

3         Mr. Held's declaration appears to have been completed on a standard form.  (Dkt. No.

4    40.)  Plaintiffs have attached four additional pages to the declaration.  (Id.)  The majority of the

5    incidents described on these pages are not based on first-hand knowledge and are improperly

6    included in Mr. Held's declaration. Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to

7    support or oppose a motion must be made on personal knowledge, set out facts that would be

8    admissible in evidence, and show that the affiant or declarant is competent to testify on the

9    matters stated.")  The Court GRANTS Defendant's motion to strike pages 6-9 of Mr. Held's

10   declaration and STRIKES these pages.

11        Finally, Defendant argues that Plaintiffs violated Federal Rule of Civil Procedure 5.2(a)

12   by not redacting the names of minors that appear in the exhibits filed in support of their response

13   brief.  (Dkt. No. 41 at 4.)  Plaintiffs have refiled their response brief as an "Amended Response

14   to Motion for Summary Judgment" with the names of the minors redacted to cure this problem

15   (Dkt. No. 44), and the Court has sealed Plaintiffs' original response.  Defendant's argument is

16   therefore moot.

17        The Court GRANTS in part and DENIES in part Defendant's First Motion to Strike.  The

18   Court GRANTS Defendant's First Motion to Strike as to exhibits 6 and 7 and STRIKES these

19   exhibits.  The Court DENIES Defendant's First Motion to Strike as to exhibits 1, 2, 9, 10, 11, 12,

20   13, 14.  Because they do not bear on the Court's decision, the Court also DENIES Defendant's

21   First Motion to Strike as to exhibits 3, 4, 5, 8, 15, 16, 17, 18, 19.  The Court DENIES

22   Defendant's First Motion to Strike as to pages 1 through 5 of Mr. Held's declaration.  The Court

23

24

1    GRANTS Defendant's First Motion to Strike as to pages 6 through 9 of Mr. Held's Declaration

2    and STRIKES these pages.

3          II.     Defendant's Second Motion to Strike

4          On September 12, 2014, the Court issued a minute order renoting Defendant's Motion for

5    Summary Judgment to September 19, 2014. (Dkt. No. 45.) The Court's order indicated that the

6    Court would consider Defendant's Motion for Summary Judgment alongside Defendant's First

7    Motion to Strike, which noted on September 19, 2014. (Id.)

8          On September 19, 2014, the noting date for Defendant's Motion for Summary Judgment

9    and First Motion to Strike, Plaintiffs filed what is styled as a third response to Defendant's

10   Motion for Summary Judgment. (Dkt. No. 46.) The third response appears to be a set of

11   declarations from Plaintiffs Jonathan Held, Lisa Held, and J.H. (Id.) It is not clear whether these

12   declarations were filed as a response to Defendant's Motion for Summary Judgment or as a

13   response to Defendant's First Motion to Strike. In either case, the declarations were filed

14   belatedly and without leave of Court.

15         Defendant filed a Second Motion to Strike on September 19, 2014. (Dkt. No. 48.) In this

16   motion, Defendant argues that Plaintiffs improperly filed a third response to Defendant's Motion

17   for Summary Judgment on the noting date of the motion and that the Court should strike the third

18   response given Plaintiffs' prior failure to adhere to Court deadlines. (Id. at 2.)

19         Plaintiffs filed a response to Defendant's Second Motion to Strike on September 30,

20   2014. (Dkt. No. 51.) In their response, Plaintiffs argue that Defendant has not been prejudiced

21   by Plaintiffs' belated filing. (Id. at 1.) Plaintiffs also argue that the Court should not dismiss

22   Plaintiffs' claims through summary judgment because this is only permissible in "extreme

23   circumstances." (Id. at 1-2) (citing Dahl v. City of Huntington Beach, 84 F.3d 363 (9th Cir.

24

1    1996)).  Plaintiffs further argue that the Court cannot interpret their delay in responding to

2    Defendant's Motion for Summary Judgment and First Motion to Strike as an admission.  (Id. at

3    2.) (citing LCR 7(b)(2)).  Finally, Plaintiffs allege that Defendant has failed to provide responses

4    to discovery which has affected Plaintiffs' ability to access evidence.  (Id.)  Defendant filed its

5    reply to Plaintiffs' response on October 3, 2014.  (Dkt. No. 52.)

6           Because Dahl discusses the factors that a court should consider before imposing dismissal

7    as a sanction under Federal Rule of Civil Procedure 41, Plaintiffs' reliance on Dahl is inapposite.

8    Dahl, 83 F.3d at 366.

9           Plaintiffs' second contention that Defendant has not been prejudiced by Plaintiffs'

10   belated filings is plainly false.  In its First Motion to Strike, Defendant identified problems with

11   the evidence Plaintiffs submitted in support of their response brief.  (Dkt. No. 41.)  Plaintiffs

12   have attempted to cure these issues with their evidence by submitting new and revised

13   declarations.  (Dkt. No. 46.)  The Court's order renoting Defendant's Motion for Summary

14   Judgment did not extend any Court deadlines.  (Dkt. No. 45.)  If the Court were to consider the

15   new evidence submitted by Plaintiffs, Plaintiffs would benefit from their disregard of the Court's

16   deadlines.

17          Finally, Plaintiffs' contention that their failure to comply with filing deadlines is the

18   result of Defendant's failure to respond to discovery requests is unavailing.  To the extent that

19   Plaintiffs required discovery from Defendant to file a timely response brief, Plaintiffs were at

20   liberty to file a motion to compel or to otherwise seek relief from this Court.  Plaintiffs did not do

21   so.

22

23

24

1    Accordingly, the Court GRANTS Defendant's Second Motion to Strike and STRIKES

2    Plaintiffs' third response to Defendant's Motion for Summary Judgment (Dkt. No. 46) and all

3    related exhibits.

4    III.    Defendant's Motion for Summary Judgment

5        a.  Legal Standard Summary Judgment

6    Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v.

7    City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The

8    underlying facts are viewed in the light most favorable to the party opposing the motion.

9    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary

10   judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

11   the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party

12   moving for summary judgment has the burden to show initially the absence of a genuine issue

13   concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  Once the

14   moving party has met its initial burden, however, the burden shifts to the nonmoving party to

15   establish the existence of an issue of fact regarding an element essential to that party's case, and

16   on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317,

17   323-24 (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but

18   instead must have evidence showing that there is a genuine issue for trial.  Id. at 324.

19       b.  Plaintiffs' Section 504 and ADA Claims

20   Title II of the ADA provides: "No qualified individual with a disability shall, by reason

21   of such disability, be excluded from participation in or be denied the benefits of the services,

22   programs, or activities of a public entity, or be subjected to discrimination by any such entity."

23   42 U.S.C. §12132. To prove that a public program or service violated Title II of the ADA, a

24

plaintiff must show: (1) he is a "qualified individual with a disability;" (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

A plaintiff bringing suit under Section 504 of the Rehabilitation Act of 1973 ("Section 504") must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. Id.

Because the elements of Plaintiffs' ADA and Section 504 claims do not differ in any respect relevant to the resolution of this motion, the Court addresses the claims together. Id. at 1135-36.

Plaintiffs seek compensatory damages under the ADA and Section 504.  (Dkt. No. 1 at 19.)   To recover monetary damages, Plaintiffs' must prove intentional discrimination by Defendant, which requires a showing of deliberate indifference.   Duval, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  Id. at 1139.  The failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." Id.  The public entity "is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." Id.  Section 504 and the ADA "create a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." Id., citing Wong v. Regents of University of California, 192 F.3d 807, 818 (9th Cir.1999).  Therefore, an entity does

1   not "act" by merely proffering just any accommodation, especially when the accommodation is

2   based on stereotypes of the person's disability.  Id.  Rather, it must consider the individual's

3   particular needs when investigating what accommodations are reasonable.  Id.

4        Defendant does not dispute that J.H. suffered from disabilities and was otherwise

5   qualified for educational benefits.  Defendant moves for summary judgment as to Plaintiffs'

6   claims under the ADA and Section 504 by arguing that Plaintiffs lack evidence: (1) that

7   Defendant acted with deliberate indifference; and (2) that J.H. was denied the benefit of any

8   school programs or services or otherwise discriminated against on account of his disability.

9   (Dkt. No. 27 at 14-18.)

10       In their response, Plaintiffs cite to several alleged failures on the part of Defendant

11  without identifying which failures relate to their Section 504 and ADA claims.  (Dkt. No. 39 at

12  4-14.)   The failures alleged, in essence, center on: (1) the drafting and implementation of J.H.'s

13  504 plan; (2) disciplinary action taken against J.H.; (3) Defendant's alleged failure to investigate

14  discriminatory remarks and actions by teachers and administrators; and (4) Defendant's alleged

15  failure to investigate incidents of bullying.  (Id.)

16       Courts that have recognized a cognizable claim for peer-to-peer disability-based

17  harassment under Section 504 and the ADA have applied the analysis for claims of peer-to-peer

18  sexual harassment under Title IX of the Civil Rights Act set forth by the Supreme Court in Davis

19  v. Monroe County Board of Education, 526 U.S. 629 (1999).  See e.g. SS v. Kentucky, 532 F.3d

20  445, 453 (6th Cir. 2008).  Under Davis, a plaintiff must show that he or she was harassed

21  because of his or her disabilities.  Id. at 454.  Assuming Plaintiffs can state a cognizable claim

22  for peer-to-peer disability based harassment under Section 504 and the ADA and that they

23  intended to do so, Plaintiffs' evidence does not demonstrate J.H. was harassed by other students

24

1   because of his disabilities.  (Dkt. Nos. 39-3, 39-4, and 40.)  Accordingly, the Court does not

2   consider Plaintiffs' allegation that Defendant failed to investigate known instances of bullying as

3   part of its analysis of Plaintiffs' ADA and Section 504 claims.

4                   i.   Drafting and Implementation of J.H.'s Section 504 Plan

5        Plaintiffs argue genuine issues of material fact remain as to whether Defendant properly

6   drafted and implemented J.H.'s Section 504 plan.  (Dkt. No. 39 at 6.)  Plaintiffs allege

7   Defendant: (1) improperly removed a behavioral accommodation from J.H.'s Section 504 plan;

8   (2) that J.H.'s disabilities were not adequately described in his Section 504 plan; and (3) that

9   teachers at Leota Junior High School failed to implement and consistently follow J.H.'s Section

10  504 plan.  (Id. at 6-14.)

11       Plaintiffs argue Defendant's improperly removed a behavior accommodation from J.H.'s

12  Section 504 plan that allowed J.H. to visit the school counselor, Mr. Sauer, before being sent to

13  the vice principal's office.  (Id. at 7-8.)  Plaintiffs argue that this accommodation was necessary

14  for J.H.'s success because of J.H.'s documented anxiety issues and because the vice principal

15  discriminated against J.H.  (Id. at 8.)  Defendant proposed that J.H. be evaluated by Dr. Young, a

16  psychologist, so that data could be gathered to support the changes regarding behavior and

17  anxiety issues in J.H.'s Section 504 plan requested by Mr. and Mrs. Held.  (Dkt. No. 39-9.)  Mr.

18  and Mrs. Held canceled J.H.'s appointment with Dr. Young.  (Id.)  Plaintiffs assert that they did

19  not want Dr. Young to evaluate J.H. because they believed that Dr. Young lacked experience and

20  was biased toward school districts.  (Dkt. No. 39 at 8.)  Plaintiffs cite to no evidence to support

21  their contention that Dr. Young was biased toward school districts.  While it is not clear why the

22  behavior accommodation was removed from J.H.'s Section 504 plan, Plaintiffs fail to

23  demonstrate that Defendant acted with deliberate indifference to their request for a behavior

24

accommodation.   Plaintiffs' evidence shows, at most, that Plaintiffs and Defendant disagreed about the best way to evaluate J.H.

Plaintiffs do not identify the specific deficiencies with the way in which J.H.'s disabilities were described in his Section 504 plan and the Court cannot identify any from the documents Plaintiffs have filed in support of their response.  (Id.)

Plaintiffs argue that teachers at Leota Junior High School routinely failed to implement J.H.'s Section 504 plan and that they implemented the plan inconsistently.   (Id. at 11-13.) Plaintiffs assert that their complaint, Mr. Held's deposition testimony, and Mr. Held's declaration demonstrate that Plaintiffs "have been extremely dissatisfied with the way Defendant has handled J.H.'s needs." (Id. at 13.)

Defendant contends that Plaintiffs cannot show that Defendant was deliberately indifferent to J.H.'s needs because Defendant made "extraordinary efforts to meet J.H.'s needs." (Dkt. No. 27 at 15.)  J.H.'s Section 504 plan was revised four times to accommodate his needs. (Dkt. No. 33 at 3.)  J.H.'s teachers made efforts to implement J.H.'s Section 504 plan including, but not limited to, the following: (1) prompting J.H. to turn in assignments; (2) responding to emails from J.H.'s parents; (3) participating in meetings regarding J.H.'s Section 504 plan; (4) allowing J.H. additional time to complete assignments; (5) prompting J.H. to write down his assignments; and (6) prompting J.H. to be organized.  (Dkt. Nos. 30, 31, 35 and 36.)  During the 2012-2013 school year, J.H.'s counselor Michael Sauer distributed J.H.'s Section 504 to his teachers and made efforts to ensure that they understood the plan.  (Dkt. No. 34. at 2.)  From February 2013 onwards, Mr. Sauer met with J.H. on Thursdays to go over his outstanding homework.  (Id.)  Mr. Held testified in his deposition that issues with J.H.'s Section 504 plan were resolved to his satisfaction ninety percent of the time.  (Dkt. No. 27 at 15.)  Viewing these

1   facts in a light most favorable to Plaintiffs demonstrates that while Defendant may have been

2   negligent in supervising J.H.'s Section 504 plan, Defendant did not act with deliberate

3   indifference.

4        The material facts of this case do not demonstrate that Defendant acted with deliberate

5   indifference towards J.H. by failing to properly draft and implement J.H.'s Section 504 plan.

6   While Plaintiffs have presented evidence that Defendant may have been negligent in supervising

7   J.H.'s 504 plan, Plaintiffs do not produce evidence showing that Defendant's conduct was more

8   than negligent and involved an element of deliberateness.

9                 ii.  Discriminatory Treatment

10       Plaintiffs argue that genuine issues of material fact exist as to whether Defendant acted

11   with deliberate indifference by failing to investigate discriminatory actions and comments by

12   teachers and administrators at Leota Junior High School.  (Dkt. No. 39 at 10.)

13       Plaintiffs argue that Mr. Held notified Defendant about many of the alleged

14   discriminatory actions in an email dated June 15, 2012 and that Defendant failed to take any

15   action in response.  (Id. at 10-11.)  Plaintiffs also assert that "Defendant employee Obadiah

16   Dunham," the principal of Leota Junior High School, "was aware of the problems that were

17   never resolved by himself and other school district employees." (Id. at 10.)

18       On June 15, 2012, Mr. Held sent an email to Carolyn O'Keeffe, Obadiah Dunham, and

19   two others regarding three alleged incidents of discrimination: (1) a staff member called J.H.

20   stupid and a troublemaker; (2) a staff member told Mr. Held she didn't care if J.H. had ADD;

21   and (3) J.H. was disciplined on account of his disabilities when he received a detention for

22   leaving trash on the cafeteria table.  (Dkt. No. 39-14.)  While Plaintiffs allege that Defendant

23   admitted to taking no action in response to this email, Plaintiffs cite to no evidence to support

24

1   this contention other than a discovery response from Defendant which acknowledges that

2   Defendant received Mr. Held's June 15, 2012 email.  (Dkt. No. 39 at 11.)  Plaintiffs' evidence

3   also contradicts their contention that Defendant did not investigate the allegations of

4   discrimination.  (Dkt. No. 39-1.)

5        Defendant requested that an outside attorney investigate allegations of discrimination

6   raised by Mr. Held at J.H.'s February 2013 Section 504 meeting, including those incidents

7   mentioned in Mr. Held's June 2012 email.  (Id.)  The attorney investigated eight incidents of

8   discrimination alleged by Plaintiffs.  (Id. 2-3.)  The attorney found that five of the eight alleged

9   incidents of discrimination took place during the 2012-2013 school year, after Mr. Held sent his

10  June 2012 email.  (Id.)  The remaining incidents took place in the fall and winter of 2012.  (Id.)

11  The attorney interviewed each individual that was involved in each alleged incident.  (Id. at 3.)

12  The attorney found that some of Mr. Held's allegations had been brought up prior to the

13  February 2013 meeting and had been investigated by Leota Junior High School staff.  (Id. at 2.)

14  The investigator found that Obadiah Dunham, the principal of Leota Junior High School, had

15  investigated many of Mr. Held's allegations prior to the school district's formal investigation,

16  including two of the three incidents mentioned in Mr. Held's June 2012 email.  (Id. at 3-7.)

17       The material facts of this case do not demonstrate that Defendant was deliberately

18  indifferent to acts of discrimination by teachers and staff at Leota Junior High School.  While

19  Plaintiffs have presented evidence that Defendant may not have responded to each of Plaintiffs'

20  concerns, Plaintiffs' evidence does not support a finding of deliberate indifference.  The material

21  facts show that Leota Junior High School staff investigated many of Mr. Held's allegations of

22  discrimination informally before the school district commissioned a formal investigation and

23  ultimately dismissed the allegations.

24

1                      iii.   Disciplinary Action Against J.H.

2        In order for Plaintiffs to state a prima facie case for disability discrimination under the

3 ADA or Section 504, Plaintiffs must show that Defendant discriminated against J.H. on the basis

4 of his disability.  See Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1045 (9th Cir.

5 1999).  Plaintiffs assert that genuine issues of material fact exist as to their ADA and Section 504

6 claims because Defendant discriminated against J.H. on the basis of his disability by disciplining

7 him in ways disparate from his non-disabled peers.  (Dkt. No. 39 at 4, 9.)  Defendant contends

8 that J.H. was appropriately disciplined.  (Dkt. No. 27 at 11.)

9        In April 2013, J.H. received a detention for urinating on the floor, walls, and sink at

10 Wellington Elementary School.  (Dkt. No. 33 at 5.)  Plaintiffs allege that J.H. was frightened into

11 urinating on the floor of the Wellington Elementary School bathroom when another student cut

12 off the bathroom lights "which caused J.H. anxiety and loss of bladder control . . ." (Dkt. No. 39

13 at 4-5.)  Plaintiffs claim that while other students were involved, only J.H. was disciplined.  (Id.)

14 Plaintiffs allege that this is confirmed by Christopher Bigelow's report, the district hearing

15 officer who investigated the incident when Mr. and Mrs. Held protested J.H.'s punishment,

16 because Mr. Bigelow's report states that "one student did admit to cutting off the lights for a few

17 seconds."  (Dkt. No. 28-3 at 7.)  However, Mr. Bigelow also found "the same student stated that

18 J.H. was urinating on the floor prior to the lights being turned out and continued to do so when

19 the lights were flicked back on."  (Id.)  The report does not support Plaintiffs' contention that

20 other students caused the Wellington Elementary School bathroom incident to occur and were

21 not disciplined.  The Wellington Elementary School bathroom incident was investigated by

22 Leota Junior High School staff and it was found that J.H.'s story regarding what had transpired

23 differed from that of other witnesses.  (Dkt. No. 33 at 5.)  Obadiah Dunham believed the

24

1    accounts of the other witnesses involved in the incident and, accordingly, assigned J.H. Saturday

2    School.  (Id.)

3           The material facts do not demonstrate that Defendant discriminated against J.H. because

4    of his disabilities by disciplining him in ways disparate from his peers without disabilities.  The

5    material facts show that Defendant disciplined J.H. because Defendant found, after an

6    investigation, that J.H. was responsible for the incident.

7           Plaintiffs have failed to show that genuine issues of material fact exist with respect to

8    their ADA and Section 504 claims.  Accordingly, the Court GRANTS Defendant's Motion for

9    Summary Judgment as to these claims.

10                 c.  Plaintiffs' State Law Claims

11          Plaintiffs allege state law claims for negligence, intentional infliction of emotional

12   distress, and discrimination on the basis of disability, sex, and religion in violation of the

13   Washington Law Against Discrimination.  (Dkt. No. 1.)  The Court has supplemental jurisdiction

14   over Plaintiffs' state law claims.  (Dkt. No. 1 at 3.)

15          A federal court may assume supplemental jurisdiction over all other claims that are so

16   related to claims in the action within the original jurisdiction so that they form part of the same

17   case or controversy.   28 U.S.C. § 1367.   A federal court may decline to exercise this

18   supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the

19   claim substantially predominates over the claim or claims over which the district court has

20   original jurisdiction; (3) the district court has dismissed all claims over which it has original

21   jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining

22   jurisdiction.  Id.

23

24

1    Two of these four factors weigh in favor of dismissal of Plaintiffs' state law claims.

2  First, the Court has granted Defendant summary judgment on all claims over which it has

3  original jurisdiction.   Second, the briefing on Defendant's Motion for Summary Judgment

4  suggests that Plaintiffs' negligence claim may present novel issues of state law.  (Dkt. No. 27 at

5  2.)

6    The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims

7  and DISMISSES Plaintiffs' state law claims without prejudice.

8  <u>**Conclusion**</u>

9    The Court GRANTS in part and DENIES in part Defendant's First Motion to Strike,

10  GRANTS Defendant's Second Motion to Strike, GRANTS in part Defendant's Motion for

11  Summary Judgment, and DISMISSES Plaintiffs' state law claims without prejudice.  The Court

12  DENIES Plaintiffs' Motion for Sanctions and to Compel (Dkt. No. 55), Plaintiffs' Motion to

13  Amend Motion for Sanctions and to Compel (Dkt. No. 58), and Defendant's Motion for Relief

14  from Discovery Deadline and Motion to Strike Plaintiffs' Amended Motion to Compel (Dkt. No.

15  59) as moot.

16    The clerk is ordered to provide copies of this order to all counsel.

17    Dated this 17th day of November, 2014.

18

19

20    Marsha J. Pechman
   United States District Judge

21

22

23

24